## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | Civil No. 05-CV-767 (DSD/SRN) |
| **Petitioner,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Calvin Wedington,** | |
| **Respondent.** | |

Lonnie F. Bryan, Esq., on behalf of Petitioner

Katherine Menendez, Esq., on behalf of Respondent

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on the Government's Petition to Determine the Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 (Doc. No. 1). This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons set forth below, the testimony and exhibits presented at the hearing on this matter, and all other records herein, this Court recommends that the Government's petition be granted.

A hearing on this matter was held on May 24, 2005, wherein Dr. Daniel Shine, Respondent's evaluating psychiatrist, testified. Respondent also attended the hearing.

**I.   BACKGROUND**

Respondent experienced the onset of schizophrenia in the years following his 1982 conviction

for second degree murder.[1]  (Govt. Ex. 1, Forensic Evaluation, at 1.)  Symptoms of his psychosis became more prominent during his incarceration at various BOP institutions, where he has been described as paranoid, delusional, disorganized, and suffering from auditory hallucinations.  Id.

Because of Respondent's psychotic symptoms, he was determined to be in need of treatment under 18 U.S.C. § 4245 in 1987, 1990 and 2003.  He required involuntary treatment with anti-psychotic medication to stabilize his schizophrenia during these commitments.  Id.  Prior to his transfer to FMC Rochester, Respondent had been confined at FCI Petersburg in Petersburg, Virginia.  He had been receiving mental health treatment on a consistent basis following his discharge from the most recent § 4245 involuntary hospitalization at FMC Butner.  Respondent began to refuse anti-psychotic treatment in December 2004 at FCI Petersburg and also increasingly refused treatment and evaluation of his medical conditions, namely, diabetes and hypertension.  Because of growing concern that the lack of treatment for his psychosis and inconsistent treatment for his medical conditions would have negative effects on his health, staff at FCI Petersburg arranged for an emergency transfer referral for mental health and medical evaluations. Thus, Respondent's transfer was designated to the Mental Health Unit at FMC Rochester.

Respondent, now a forty-seven-year-old male, arrived at FMC Rochester on March 2, 2005.  Id.  During initial assessments, staff noted that he was ill, having difficulty both answering basic questions and answering questions coherently.  Respondent was placed in FMC Rochester's Martin Unit, a semi-locked unit, so that staff could monitor his status.  At the time he arrived, Respondent was

---

[1] Respondent is serving a life sentence for this offense with a projected release date, via two-thirds, of February 20, 2012.

taking his medications for hypertension and diabetes, but he began to refuse Atenolol, a medication for hypertension, the day after his arrival. Approximately a week later, Respondent refused Metformin, a medication for diabetes, and refused to permit blood glucose tests. (Govt. Ex. 1 at 2.) Nursing staff described him as irritable, tense, and muttering to himself. When staff attempted to redirect him, Respondent became increasingly angry.

Dr. Daniel Shine, Staff Psychiatrist at FMC Rochester, conducted a psychiatric risk assessment interview of Respondent shortly after Respondent's arrival. Dr. Shine testified that some of his preliminary questions about Respondent's background appeared to make him angry and that Respondent was unable to answer certain questions, although Respondent did not deliberately refuse to answer questions. During the interview, Respondent remained angry and argumentative, describing himself as a "medical officer, surgeon, psychiatrist, pilot and U.S. Marshal." Id. He stated that FCI Petersburg, FMC Butner and FMC Rochester had all been destroyed; that he refused to accept Metformin because he did not have diabetes and because the kind of Metformin given to him by nurses was part of an experiment by "a Czechoslovakian general." Id. In addition, he denied having a mental illness. He stated that his body has been blown apart, but was sewn together with no sign of scars. Id..

Because nursing staff was concerned about Respondent's increasing signs of paranoia, anger and aggression toward other patients, and in light of Dr. Shine's interview, Dr. Shine felt that Respondent should be transferred from the semi-locked Martin Unit into the Special Housing Unit ("SHU"), a locked-down unit, for further evaluation.

## II.     DISCUSSION

Under 18 U.S.C. § 4245, a prisoner who is serving a sentence in federal prison "may not be transferred to a mental hospital without the prisoner's consent or a court order." United States v. Watson, 893 F.2d 970, 975 (8th Cir. 1990), vacated in part on other grounds by United States v. Holmes, 900 F.2d 1322 (8th Cir. 1990). If the prisoner objects, the government may petition for a hearing on the present mental condition of the prisoner to determine "if there is reasonable cause to believe that the person may presently be suffering from a mental disease or defect for treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4245(a). "If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General." Id. at § 4245(d).

Accordingly, this Court is required to determine the following: (1) whether Respondent is suffering from a mental disease or defect; (2) if so, whether Respondent is in need of care or treatment for that disease or defect; and (3) if so, whether FMC Rochester is a suitable facility.

### A.     Respondent is Suffering from a Mental Disease or Defect

At the hearing on this matter, Dr. Shine testified that Respondent suffers from schizophrenia, undifferentiated type.[2] (See generally, Govt. Ex. 1, at 3.) Dr. Shine testified that his diagnosis is in

---

[2] Respondent voiced no objections to the admission of Dr. Shine's curriculum vitae, Govt. Ex. 3, which sets forth Dr. Shine's education, experience and qualifications to offer an expert medical opinion.

accord with that of his colleagues at other federal institutions where Respondent has been incarcerated and is supported by his review of the medical records, his own evaluations and observations.

Dr. Shine testified that manifestation of the following five main areas of psychotic symptoms support his diagnosis of schizophrenia: (1) hallucinations; (2) delusions; (3) disorganized speech; (4) disorganized behavior; and (5) negative symptoms.

As to the first symptom, Dr. Shine testified that Respondent experiences hallucinations by continuing to hear voices.

Regarding delusions, Dr. Shine testified that Respondent has had persecutory delusions about doctors and nurses attempting to poison or kill him, though he has voiced such beliefs more frequently in the past, as the medical records indicate. Respondent maintains grandiose delusions, believing he is a pilot or U.S. Marshal, or that he should be issuing orders to nursing staff, because he believes that he is a surgeon. For example, Dr. Shine noted that on one occasion when a nurse attempted to perform a finger stick test to obtain a glucose reading, Respondent reached through the door to grab the equipment. While the nurse viewed this as an attempted assault, Respondent indicated that based on his belief that he is a doctor, he felt that he could conduct the test better himself. Respondent also has described bizarre delusions, such as stating that his body was "annihilated on the streets with massive tissue damage and sewn back together with no sign of scars." (Govt. Ex. 1 at 2.)

The third symptom, disorganization in speech, manifests during conversation, in which Respondent is hard to follow or is incoherent. According to Dr. Shine, Respondent often mumbles in response to a question, but then refuses to either explain himself or repeat his response.

The fourth symptom, disorganized/bizarre behavior, is illustrated by Respondent's habit of

5

collecting containers filled with urine in his cell, including a peanut butter jar containing a donut and a layer of urine. In addition, Dr. Shine noted that Respondent engages in ritualistic behaviors. For example, his room is neat and items are laid out in a way that appear to have special meaning to Respondent.

Finally, as to the last symptom, negative symptoms, Dr. Shine explained that this involves a taking away, or diminution, from normal behavior. With Respondent, he testified that this is manifested in Respondent's speech and in his lack of motivation, e.g., he often lies in bed, staring, or is at times completely mute.

Based on his analysis, to a reasonable degree of medical certainty, Dr. Shine diagnosed Respondent with undifferentiated schizophrenia, a mental disease or defect. Respondent's prognosis is dependent on treatment, in Dr. Shine's opinion. For example, if untreated, Dr. Shine testified that Respondent is quite ill and shows no evidence of spontaneous remission of his schizophrenia. In addition, his refusal to receive treatment for his hypertension and diabetes pose potentially life threatening consequences. Dr. Shine indicated that since his arrival, staff have been unable to check Respondent's blood pressure, so Dr. Shine could not even address the status of Respondent's hypertension. Likewise, staff have only rarely been able to test Respondent's glucose, whereas standard treatment involves twice-daily glucose finger-stick tests.    In contrast, with treatment, Dr. Shine opined that Respondent's prognosis is excellent. Although Dr. Shine does not believe that medication will offer a complete cure, he noted that with treatment, Respondent has previously demonstrated the ability to speak coherently, to be generally agreeable to medical treatment such as submitting to finger stick tests, and to be less aggressive. Dr. Shine testified that, in his opinion,

Respondent needs such treatment, including the prescription of anti-psychotic drugs for schizophrenia. Furthermore, Dr. Shine believes that medications alone are not sufficient for Respondent, as borne out by Respondent's past experiences at other facilities. Specifically, Dr. Shine recommended that Respondent be placed in a therapeutic environment with nursing supervision and medical staff; that he be involved in treatment groups for schizophrenia, including groups that discuss the effect of schizophrenia on other chronic medical problems.

Although Respondent did not testify, his counsel noted that he does not believe that he suffers from mental illness and denies any hallucinations or thoughts of harm to himself or others. He does not wish to receive medication for his mental health or other medical conditions, and he has not harmed or threatened others.

This Court finds Dr. Shine's expert opinion credible and persuasive, and it demonstrates, by a preponderance of the evidence, that Respondent is suffering from a mental disease or defect.     **B.**

**Respondent is in Need of Custody for Care and Treatment**

The standard for when a prisoner is "in need of custody for care or treatment" under 18 U.S.C. § 4245(d) has not been firmly established. One district court has explained that there is a continuum of "need" between treatment that is merely beneficial and treatment that is necessary to combat dangerous behavior. United States v. Horne, 955 F.Supp. 1141, 1146-47 (D. Minn. 1997). It is clear, however, that "if a prisoner whose mental illness was left untreated would pose a danger to himself or others if placed in the general prison population, . . . treatment is needed within the meaning of 18 U.S.C. § 4245." Id. at 1149.

Here, Respondent is in need of custody for care or treatment because without it he poses a

danger to himself. Dr. Shine noted that Respondent has not exhibited any violent or threatening behavior at FMC Rochester such that he poses a threat to others. However, Dr. Shine testified that if untreated, Respondent's schizophrenia shows no sign of improvement and will severely affect his hypertension and diabetes, as Respondent is unwilling to receive medication for those conditions, or to consent to monitoring those conditions, when he is not receiving anti-psychotic medication. If Respondent gets psychiatric treatment and medication, based on Respondent's past behavior, Dr. Shine expects that Respondent will be more compliant with medical care related to his diabetes and hypertension.

As to Respondent's placement, Dr. Shine noted that when Respondent was housed in the general population at FCI Petersburg, his condition eventually deteriorated to the point that staff there emergently transferred him for mental health evaluation and treatment to Rochester. Dr. Shine concluded that Respondent is in need of care and treatment available at FMC Rochester which will not only be beneficial, but possibly life-saving. Dr. Shine testified that FMC Rochester is the appropriate facility to treat Respondent's psychiatric and medical complications. FMC Rochester not only has the medical staff necessary to treat Respondent, but also offers the therapeutic environment and support groups critical to Respondent's health.

A preponderance of the evidence demonstrates that Respondent's mental disease or defect poses a danger to himself. Without treatment, Respondent likely will experience no improvement of his schizophrenia and without treatment for schizophrenia, his hypertension and diabetes will remain untreated and unmonitored, posing a grave health risk.

    **C.**    **FMC Rochester is a Suitable Facility**

Respondent appears to concede that FMC Rochester is a suitable facility for care or treatment, and this Court finds entirely persuasive the evidence presented that FMC Rochester is a suitable facility to provide Respondent with necessary medical and therapeutic treatment.

Based upon the foregoing and all the files, records, and proceedings herein,

Therefore, **IT IS HEREBY RECOMMENDED THAT**:

1. The Government's Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 (Doc. No. 1) be **GRANTED**. Respondent is in need of custody for care or treatment of a mental disease and/or defect; and

2. Respondent should be committed to the custody of the Attorney General of the United States pursuant to 18 U.S.C. § 4245 for hospitalization and treatment until the Respondent is no longer in need of such custody for care and treatment, or until the expiration of the sentence of imprisonment, whichever occurs earlier.

Dated:   May 26, 2005

        s/Susan Richard Nelson
        SUSAN RICHARD NELSON
        United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by June 10, 2005, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.